**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-1862

SHERITA HAYES,

Plaintiff − Appellant,

v.

SONABANK, now known as Primis Bank,

Defendant – Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. John A. Gibney, Jr., Senior District Judge. (3:21−cv−00230−JAG)

Submitted: November 9, 2023                     Decided: June 28, 2024

Before DIAZ, Chief Judge, KING and GREGORY, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ON BRIEF:** Christopher E. Brown, THE BROWN FIRM PLLC, Alexandria, Virginia, for Appellant. Joan C. McKenna, Lilias M. Gordon, O'HAGAN MEYER, PLLC, Richmond, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This appeal is about Sonabank's decision to terminate Sherita Hayes's employment in March 2020. Hayes, an African American woman, alleges that Sonabank did so after she reported racially discriminatory remarks and acts by the Bank, constituting retaliation that violated 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964. Sonabank, however, maintains that it terminated Hayes's employment as a "Relationship Manager" because of her deficient job performance and lack of production.

The district court found that though Hayes made a prima facie showing of retaliation, Sonabank in turn offered a legitimate, nonretaliatory reason for firing her. *Hayes v. Sonabank*, No. 3:21-cv-230, 2022 WL 3325869, at *9–11 (E.D. Va. Aug. 11, 2022). And because Hayes didn't then meet her burden of showing that Sonabank's proffered reason was pretextual, the district court granted summary judgment to Sonabank on those claims. *Id.* at *11–12.[1]

We agree and affirm the district court's judgment.

---

[1] The district court also granted summary judgment on Hayes's claim of unlawful termination under 42 U.S.C. § 1981 and Title VII. Hayes, however, doesn't challenge the district court's order on those claims and has thus abandoned them. *See Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) (cleaned up).

I.

As did the district court, we view the facts in the lights most favorable to Hayes.

*Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (cleaned up).  We also

are required to draw "all justifiable inferences" in Hayes's favor.  *Id.* (cleaned up).

A.

Hayes began working for Sonabank in 2018, and in October of that year, the Bank

invited Hayes to become a Relationship Manager ("RM").  Hayes accepted the position,

where she was responsible for (among other things) "develop[ing] and implement[ing]

business development strategies and activities in order to attract profitable new business

for the Bank," while also "[g]enerat[ing] new deposit accounts and servic[ing] the deposit

needs of clients."  J.A. 113.  The then-president of Sonabank held periodic meetings with

the RM team and emphasized the need to secure and "[g]row . . . deposits" from new and

existing clients.  J.A. 134.

Hayes's performance in meeting these goals was mixed at best.  Though she had

some success—for example, "achiev[ing] a $3.8 million checking account acquisition,"

*see, e.g.*, J.A. 282, and acquiring "35 consumer deposit new checking accounts," J.A.

663—she nevertheless remained in the bottom half of performers on the RM team in the

first quarter of 2019.  *See, e.g.*, J.A. 284, 303, 311.  Hayes herself then reported that the

third quarter was "a bit bump[y]."  J.A. 664.

Sonabank also identified other missteps in Hayes's work.  Several times she

submitted incorrect expense and production reports and failed to timely complete

3

mandatory online training. This prompted Sonabank's management to reach out to Hayes with reminders and offers of help.

During this period too, Hayes turned at least some of her focus to Community Reinvestment Act ("CRA")[2] activities, and to diversity and inclusion efforts at Sonabank. But the then-human resources director and members of the Bank's marketing team told Hayes that "diversity and inclusion training [was] not one of [Sonabank's] strategic focuses at this time," J.A. 142, and that "[her] main responsibility [was] as an RM and to retain and grow deposits/relationship[s]," J.A. 843. And Hayes also received feedback about "staying in [her] lane," J.A. 845, regarding these CRA activities, which she interpreted as evidence of Sonabank's discriminatory attitude against "support[ing] [B]lack businesses," Appellant's Br. at 34.

Hayes asserts that Sonabank employees made other discriminatory remarks, which form the basis of her retaliation claim. After one RM meeting, another African American employee told Hayes that "they treat us differently here" and "rubbed [the] back of her hand," J.A. 954:5-7, indicating that the source of this different treatment was her race. Hayes neither responded to nor reported this comment.

---

[2] "The CRA requires the Federal Reserve and other federal banking regulators to encourage financial institutions to help meet the credit needs of the communities in which they do business, including low- and moderate-income (LMI) neighborhoods." *Hayes*, 2022 WL 3325869, at *3 n.8 (cleaned up).

4

At another meeting, a white employee made a comment about a noose, and all other employees (aside from Hayes) laughed. Hayes alleged that she reported to a superior at the Bank "how offensive [the comment] was to [her]." J.A. 391 ¶ 19.

Then, at a pivotal January 10, 2020 meeting with Hayes, a Sonabank executive, and the human resources director—with the meeting's purpose to discuss Hayes's performance and administrative issues—Hayes said that she was "being blackballed and treated unfairly." J.A. 393 ¶ 28. Later that day, Hayes emailed the executive and director "confirm[ing] [her] understanding" from the meeting that she needed to improve "accuracy" in her mileage expense reports, "engagement" with "efforts to grow the business," and "[c]ommunication" within the Bank and its leadership so that she could "increase results (referrals to branch, maintaining relationships, new dollars)." J.A. 347. But she did "not restate the more difficult issues" about being "blackballed" that she raised during the meeting. J.A. 393 ¶ 28.

About two weeks later, Sonabank issued Hayes a Corrective Action Notice, detailing the feedback she received at the January 10 meeting. J.A. 348–50. The Notice explained that Hayes submitted inaccurate mileage reimbursement reports, "ha[d] the lowest new deposit production among all Relationship Managers for 2019," was "seldom seen in the office," and had "missed deadlines on . . . compliance courses as well as production reporting." J.A. 349. The Notice also affirmed that "[a]ll of the above listed items were thoroughly discussed with [Hayes]" at the meeting and that Hayes "underst[ood] that immediate improvement in all areas must occur, and also that sales

5

production [was] the primary focus in her role." J.A. 349. Hayes signed the Notice, acknowledging she had received it.[3]

Hayes's performance improved, but only briefly, with "things revert[ing] back to the way they had been." J.A. 358. Hayes, for example, failed to meet with the branch manager during a scheduled monthly check-in "due to a number of issues on her end," and failed to follow up with a client. J.A. 358. And the branch manager reported to a Bank executive that his "biggest concern [was] that despite rarely seeing [Hayes] in the office, [he] [had] not received a single referral from her since [he] started [at that Sonabank branch] in October [2019]." J.A. 358.

Then on March 3, 2020, Hayes struggled to organize a marketing event that she was co-heading, notifying the marketing department about the event at the last minute. A marketing department representative noted that "[Hayes] seem[ed] to be passing the buck on this," J.A. 379, and that there was "[m]ajor miscommunication between [Hayes] and the branch," with "[n]either . . . ow[n]ing the responsibility" for the event," J.A. 380.

Sonabank fired Hayes the next day, ultimately replacing her with another African American woman.

## B.

The district court found that Hayes made a prima facie showing of retaliation based on her comment that "she was being blackballed and treated unfairly." *Hayes*, 2022 WL

---

[3] Separately, Hayes requested Sonabank amend the Notice but only on the basis that she hadn't failed to timely report to her supervisor that she would miss work because of a car accident as the Bank alleged. Sonabank declined, citing its employee handbook.

3325869, at *10; *see also id.* at *11 (finding that "blackballed" complaint satisfied causation element of prima facie retaliation standard, thus satisfying her burden at that first step). But the district court then found that Sonabank offered a legitimate, nonretaliatory reason for firing Hayes given her performance and administrative issues. And because the district court concluded that Hayes didn't meet "her burden of showing that Sonabank's stated reason for firing her constitute[d] pretext and that the true reason [was] retaliatory," it granted Sonabank's summary judgment motion on that claim. *Id.*

Having reviewed the district court's opinion, the record, and the parties' briefing, we find no error in the district court's reasoning and are otherwise unpersuaded by Hayes's arguments on appeal. Accordingly, we affirm the district court's summary judgment order. And we dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid in the decisional process.

*AFFIRMED*